**U.S. BANKRUPTCY COURT**
**District of South Carolina**

Case Number: **12-00209-hb**
Adversary Proceeding Number: **16-80030-hb**

### ORDER DISMISSING CLAIMS AGAINST VOLKSWAGEN GROUP OF AMERICA, INC. AND VOLKSWAGEN GROUP OF AMERICA CHATTANOOGA-OPERATIONS, LLC

The relief set forth on the following pages, for a total of 15 pages including this page, is hereby ORDERED.

**FILED BY THE COURT**
**07/22/2016**



US Bankruptcy Judge
District of South Carolina

Entered: 07/22/2016

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re,<br><br>Stotz Fredenhagen Industries, Inc.,<br><br><br>Debtor(s).<br><br>John K. Fort, as Chapter 7 Trustee,<br><br><br>Plaintiff(s),<br><br>v.<br><br>Volkswagen Group of America, Inc.<br>Volkswagen Group of America Chattanooga Operations, LLC<br>KV Consulting GmbH,<br><br><br>Defendant(s). | C/A No. 12-00209-HB<br><br>Adv. Pro. No. 16-80030-HB<br><br><br>Chapter 7<br><br>**ORDER DISMISSING CLAIMS AGAINST VOLKSWAGEN GROUP OF AMERICA, INC. AND VOLKSWAGEN GROUP OF AMERICA CHATTANOOGA-OPERATIONS, LLC** |

**THIS MATTER** came before the Court for consideration of the Motion to Dismiss filed by Volkswagen Group of America, Inc. and Volkswagen Group of America Chattanooga Operations, LLC (collectively "Volkswagen").[1] Volkswagen's Motion contends the Complaint filed by Plaintiff John K. Fort, as Chapter 7 Trustee ("Plaintiff") fails as a matter of law because the causes of action are barred by the statute of limitations. Plaintiff asserts the Motion should be denied because the statute of limitations should be equitably tolled.

The parties agree this Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C. § 157, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2). The parties have consented to this Court's entry of a final order.[2]

---

[1] ECF No. 4, filed Apr. 29, 2016.
[2] ECF No. 1 at ¶¶ 7–9; ECF No. 4-1 at 1–2.

I. <u>THE RECORD BEFORE THE COURT</u>

    A. ALLEGATIONS OF THE COMPLAINT

The relevant allegations found in the Complaint are summarized below. For the purpose of considering this Motion, the allegations of the Complaint are viewed in the light most favorable to Plaintiff, the non-movant.[3]

In December 2009, Stotz Fredenhagen Industries, Inc., ("Debtor") and Volkswagen entered into a contract whereby Debtor agreed to provide labor, services, and/or materials necessary for the construction of a conveyor system at Volkswagen's plant located in Chattanooga, Tennessee. Thereafter, Debtor contracted with various subcontractors to provide services and materials for this project. Debtor did not receive full payment from Volkswagen and, as a result, Debtor failed to pay the amounts owed to the subcontractors. The last payment Debtor made to one of the subcontractors was in October 2010. In early 2011, the subcontractors filed mechanics liens and initiated litigation against Debtor and Volkswagen in Tennessee and South Carolina state courts for amounts owed under their contracts. In the state court litigation, Volkswagen contended it owed nothing to the subcontractors because Debtor asserted no money was due from Volkswagen and its contract balance had been paid.

In early July 2011, Debtor's representatives met with attorneys to consider filing a bankruptcy for Debtor, while also forming a new American company to continue the relationship and goodwill with Volkswagen. Debtor's executives consulted with Volkswagen regarding its plan to file for bankruptcy protection and whether Volkswagen would continue to do business with the new company. Volkswagen consented to the business arrangement,

---

[3] *See infra* at 10, Section II(D).

2

despite the fact that it and Debtor both knew there were several large liens on the plant and pending lawsuits filed by the subcontractors. Two months prior to the filing of Debtor's bankruptcy petition, KV Consulting GmbH ("KV Consulting"), a holding company that owns 100% of the shares of Debtor, formed SFI America. SFI America engages in the same business as Debtor, stepped in the shoes of Debtor once it filed for bankruptcy protection, and has the same officers and directors as Debtor. In September 2011, Debtor's personnel and KV Consulting developed a plan whereby Debtor would sell additional conveyors to Volkswagen, receive payment, and have KV Consulting take all the profits from Debtor within 2011 so Debtor could file for bankruptcy relief in 2012.

On January 6, 2012, Debtor "explored" whether Volkswagen intended to make any offers to Debtor for the unpaid claims of the subcontractors.[4] Thereafter, Debtor's business ended with the filing of a voluntary petition for Chapter 7 relief on January 16, 2012. Debtor did not list any accounts receivable or debts owed by Volkswagen in its schedules, despite the fact that Volkswagen failed to pay $549,128 due to Debtor and its subcontractors. The records turned over to Plaintiff during the course of the bankruptcy case substantially consisted of computers that were actively scrubbed of all useful data. Debtor also failed to supply any information about its financial condition or where the money went from the payments it received from Volkswagen or other sources of income.

### B. ADDITIONAL EVIDENCE INCLUDED IN THE RECORD

Plaintiff's Objection to Volkswagen's Motion and Volkswagen's Reply included the following evidence outside the pleadings: an affidavit from an expert retained by Plaintiff's counsel; deposition testimony from the examination of Rainer Herzog pursuant to Fed. R.

---

[4] *Id.* at ¶ 43.

Bankr. P. 2004 ("2004 Exam"); a memorandum of law in opposition to a subcontractor's motion to proceed despite Debtor's bankruptcy served by Volkswagen on November 20, 2012, in litigation pending in Tennessee; and Volkswagen's responses to discovery requests from Plaintiff.[5] The Court gleans the following from these filings and the Court's docket,[6] which are considered in the light most favorable to the non-moving party.[7]

It appears that files were deleted from Debtor's computers in January and February 2012. It was represented at the hearing and is not disputed that Debtor turned over these computers to Plaintiff shortly after the meeting of the creditors held pursuant to 11 U.S.C. § 341,[8] which took place on February 22, 2012. Over one year later in July 2013, Plaintiff employed special counsel to investigate and recover assets of the estate.[9] There is no specific information given or dates provided for any actions during the gap of time between the filing date of January 16, 2012, and the employment of counsel in July 2013.

On August 1, 2013, Plaintiff's counsel moved for authority to conduct a 2004 Exam of Herzog. It was represented at the hearing and is undisputed that Herzog was Debtor's primary executive in North America and is the current manager and primary executive of SFI America. Plaintiff's counsel also subpoenaed documents from Herzog and SFI America concerning Debtor's relationship with Volkswagen. Herzog produced some of the documents at his 2004 Exam, which took place on September 26, 2013, and it is not disputed that he agreed to supplement his production. Instead of producing any additional documents, on

---

[5] ECF Nos. 13 & 15.
[6] Because matters were presented outside the pleadings, the Court also referred to Debtor's main bankruptcy case docket for events that occurred in the bankruptcy case and the dates those events took place.
[7] *See infra* at 10, Section II(D).
[8] Further reference to the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, shall be by section number only.
[9] Plaintiff employed the law firm Haynsworth Sinkler Boyd, P.A. as his special counsel in the bankruptcy case. This law firm previously filed a notice of appearance and request for notice on behalf of Industrie Service, LLC, one of the subcontractors who initiated state court litigation against Debtor and Volkswagen.

4

October 24, 2013, Herzog and SFI America filed a motion to quash the subpoena. A hearing on the motion to quash was held on November 26, 2013, where the matter was resolved by the parties and the motion was withdrawn. It was argued and is not disputed that SFI America and Herzog turned over the additional subpoenaed documents in June 2014. There is no specific information provided as to what additional subpoenaed documents Herzog and SFI America produced at this point or their content. There is also no specific information provided for any actions taken during the gap between resolution of the motion in November 2013 and May 2014 when Plaintiff sent Volkswagen discovery requests. Volkswagen responded to discovery requests in June 2014.

An expert was retained by Plaintiff's counsel in mid-2015 to extract data from Debtor's computers. The record does not include any other actions relating to the computers during the gap of time of approximately three years from when Plaintiff received Debtor's computers shortly after the § 341 meeting in early 2012 and the employment of the expert to analyze them in mid-2015.

### C. Plaintiff's Causes of Action

Plaintiff filed this adversary proceeding on April 5, 2016, demanding a declaratory judgment determining what obligations of Volkswagen remain due under the contract with Debtor and what other obligations Volkswagen has to the subcontractors in the state court litigation, the liability for which flows through Debtor. Plaintiff also asserts damages resulting from civil conspiracy. The Complaint alleges Debtor, Volkswagen, and KV Consulting conspired together to: (1) place Debtor in bankruptcy in order to defeat the claims of lien claimants for the work on the project; (2) preserve the valuable goodwill Debtor had in its relationship with Volkswagen by not aggressively pursuing rightful claims against

5

Volkswagen and transfer the valuable goodwill to SFI America without any liability; and (3) continue doing business with Volkswagen without generating any assets to pay creditors.

## II. APPLICABLE LAW

### A. STATUTE OF LIMITATIONS

There is no dispute that the applicable statute of limitations for both causes of action asserted here is found in South Carolina state law and the applicable limitation period is three years. S.C. Code Ann. § 15-3-530(1) & (5). South Carolina applies the "discovery" rule, which provides "the statute of limitations begins to run from the date the injured party either knows or should know, by the exercise of reasonable diligence, that a cause of action exists for the wrongful conduct." *Epstein v. Brown*, 363 S.C. 372, 376, 610 S.E.2d 816, 818 (2005) (citations omitted); *see also* S.C. Code Ann. § 15-3-535 (applying to Plaintiff's conspiracy cause of action). "The exercise of reasonable diligence means simply that an injured party must act with some promptness where the facts and circumstances of an injury would put a person of common knowledge and experience on notice that some right of his has been invaded or that some claim against another party *might* exist." *Id.* (emphasis in original). "The fact that the injured party may not comprehend the full extent of the damage is immaterial." *Id.* at 382, 610 S.E.2d at 821 (citing *Dean v. Ruscon Corp.*, 321 S.C. 360, 363–64, 468 S.E.2d 645, 647 (1996)). "***The statute of limitations begins to run from this point and not when advice of counsel is sought or a full-blown theory of recovery developed.***" *Id.* at 376, 610 S.E.2d at 818 (emphasis in original) (citations omitted).

> Statutes of limitations are not simply technicalities. On the contrary, they have long been respected as fundamental to a well-ordered judicial system. Statutes of limitations embody important public policy considerations in that they stimulate activity, punish negligence, and promote repose by giving security and stability to human affairs. One purpose of a statute of limitations is to relieve the courts of the burden of trying stale claims when a plaintiff has slept

6

on his rights. Another purpose of a statute of limitations is to protect potential defendants from protracted fear of litigation.

*Moates v. Bobb*, 322 S.C. 172, 176, 470 S.E.2d 402, 404 (Ct. App. 1996) (internal quotation marks and citations omitted). Statutes of limitations "are designed to promote justice by forcing parties to pursue a case in a timely manner. Parties should act before memories dim, evidence grows stale or becomes nonexistent, or other people act in reliance on what they believe is a settled state of public or private affairs." *State v. McClinton*, 369 S.C. 167, 175, 631 S.E.2d 895, 899 (2006) (quoting *State ex rel. Condon v. City of Columbia*, 339 S.C. 8, 19, 528 S.E.2d 408, 413-14 (2000)).

Considering the bankruptcy context and the causes of action asserted, the Chapter 7 trustee here stands in the shoes of the debtor and acquires only such rights as the debtor had. *In re Ladd*, 516 B.R. 66, 78 (Bankr. D.S.C. 2014) (citations omitted); *see generally* 3 *Collier on Bankruptcy* ¶ 323.03[3][a] (16th ed. 2010) ("[T]he trustee stands in the shoes of the debtor and can assert only those causes of action possessed by the debtor."). "In taking the rights of the debtor in property, the trustee also must bear the burden of any defenses that may be asserted." *Id.* (quoting *Drake v. Franklin Equip. Co. (In re Franklin Equip. Co.)*, 418 B.R. 176, 210 (Bankr. E.D. Va. 2009)); *In re Helms*, 467 B.R. 374, 383 (Bankr. W.D.N.C. 2012) ("When a Trustee liquidates a debtor's property, including asserting a debtor's litigation claims, he is acting as the debtor's legal successor-in-interest. In these instances, the trustee stands in the debtors' shoes and is subject to defenses which would be applicable to the debtors themselves." (citations omitted)). Therefore, the relevant inquiry for determining when the statute of limitations begins to run is "not when [the trustee] learned sufficient facts but rather when the [debtors] acquired sufficient knowledge to put them on notice." *Id.* at 77-78.

7

### B. EQUITABLE TOLLING

"Equitable tolling is a nonstatutory tolling theory which suspends a limitations period." *Hooper v. Ebenezer Senior Servs. & Rehab. Ctr.*, 386 S.C. 108, 115, 687 S.E.2d 29, 32 (2009) (citations omitted). Equitable tolling "typically applies in cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control." *Id.* at 116, 687 S.E.2d at 32. Although the *Hooper* court declined to provide an "exclusive list of circumstances that justify the application of equitable tolling," it noted that "[e]quitable tolling may be applied where it is justified under all the circumstances," and cautioned that it "should be used sparingly and only when the interests of justice compel its use." *Id.* at 117, 687 S.E.2d at 33. "The party claiming the statute of limitations should be tolled bears the burden of establishing sufficient facts to justify its use." *Id.* at 115, 687 S.E.2d at 32 (citations omitted). In the bankruptcy context, the ability to toll the statute of limitations is considered in light of the trustee's statutory duties. *See In re United Ins. Mgmt., Inc.*, 14 F.3d 1380, 1386 (9th Cir. 1994) (dismissing a trustee's equitable tolling argument in light of a trustee's failure to perform its duties with reasonable diligence).

### C. CHAPTER 7 TRUSTEE'S DUTIES AND POWERS

Plaintiff is a Chapter 7 bankruptcy trustee. The Bankruptcy Code imposes certain duties on trustees in Chapter 7 cases, including a duty to:

(1) collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest; [and]

(4) investigate the financial affairs of the debtor[.]

11 U.S.C. § 704(a). The Bankruptcy Code and Rules vest in trustees the power to question the debtor at the meeting of the creditors, conduct examinations of the debtor and others, and subpoena and require the production of documents from the debtor and others prior to filing

a lawsuit. 11 U.S.C. § 341; Fed. R. Bankr. P. 2004; *see e.g.*, *In re Enron Corp.*, 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) ("As a general proposition, Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for discovering assets, examining transactions, and determining whether wrongdoing has occurred. In this regard, courts have recognized that Rule 2004 examinations are broad and unfettered and in the nature of fishing expeditions." (quotation marks and citations omitted)).

As a fiduciary of the estate's creditors, "[l]ike any other fiduciary, a trustee must act with reasonable care and due diligence in discharging his statutory duties." *In re Dec*, 272 B.R. 218, 230–31 (Bankr. N.D. Ill. 2001) (citing *Lewis v. Cowan (In re Cowan)*, 235 B.R. 922, 924 (Bankr. W.D. Mo. 1999)). The trustee is not required to investigate "all leads in a case" or to "reconstruct a debtor's financial affairs." *Id.* Rather, "[d]ue diligence requires a trustee to conduct searches that are realistic in the ordinary course of a trustee's performance of his duties." *In re Pomaville*, 190 B.R. 632, 637 (Bankr. D. Minn. 1995) (citing *In re Levy*, 185 B.R. 378, 381 (Bankr. S.D. Fla. 1995)).

The Bankruptcy Code, in recognition of the difficulties trustees may face in investigating a debtor's affairs, provides some leniency in bringing actions to benefit the estate. For example, § 108(a) tolls the time for the trustee to commence litigation on causes of action belonging to the debtor. *See Natco Indus., Inc. v. Fed. Ins. Co.*, 69 B.R. 418, 419 (S.D.N.Y. 1987) ("[T]he purpose of the two year extension granted by section 108 is to preserve the interests of the debtor's estate." (citation omitted)). Under § 108(a), if the statute of limitations has not expired before the debtor files bankruptcy, the trustee may file suit within the original statute of limitations or within two years of the bankruptcy filing, whichever is later. 11 U.S.C. § 108(a).

9

### D. STANDARD

A motion filed under Fed. R. Civ. P. 12(b)(6)[10] challenges the legal sufficiency of the complaint and provides that a party may move to dismiss for failure to state a claim upon which relief can be granted. However, if matters outside the pleadings are considered in ruling on a motion to dismiss under Fed R. Civ. P. 12(b)(6), "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Further, "[a]ll parties must be given a reasonable opportunity to present all material that is pertinent to the motion." *Id.*

Fed. R. Civ. P. 56(a) states "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "In determining whether to grant a motion for Summary Judgment, the Court does not weigh the evidence; instead, it determines if there is a genuine issue of material fact for trial." *Hovis v. Ducate (In re Ducate)*, 355 B.R. 536, 539 (Bankr. D.S.C. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505 (1986)). On summary judgment, the court must "view the facts and the reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *United Rentals, Inc. v. Angell*, 592 F.3d 525, 530 (4th Cir. 2010).

If the movant provides evidence sufficient to establish its right to judgment, "the non-movant must proffer countering evidence sufficient to create a genuine factual dispute." *In re Proveaux*, C/A No. 07-05384-JW, slip op., at 5 (Bankr. D.S.C. Mar. 31, 2008) (quoting *In re Dig It, Inc.*, 129 B.R. 65, 66 (Bankr. D.S.C. 1991)). "A genuine issue of fact exists when there is sufficient evidence on which a reasonable jury could return a verdict for the non-moving party." *Orgain v. City of Salisbury, Md.*, 305 F. App'x 90, 97 (4th Cir. 2008). An issue of fact

---

[10] Made applicable to this adversary proceeding pursuant to Fed. R. Bankr. P. 7012(b).

10

is considered material if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

"To prevail on a summary judgment motion based on an affirmative defense, then, a defendant ordinarily must adduce evidence supporting each element of its affirmative defense, and the evidence must be such that no reasonable jury would disbelieve it." *Dec*, 272 B.R. at 225-26 (citing *Herndon v. Mass. Gen. Life Ins. Co.*, 28 F. Supp. 2d 379, 382 (W.D. Va. 1998)). If met, then the burden shifts to the plaintiff to establish a bar to the defense. Plaintiff has asserted equitable tolling in response to Volkswagen's statute of limitations defense. If Volkswagen meets its initial burden, then because "Trustee bears the burden of persuasion on th[e] question of equitable tolling, he must present sufficient evidence to show the existence of each element on which he will bear the burden of proof at trial." *Id.* (citing *Filipovic v. K & R Exp. Sys., Inc.*, 176 F.3d 390, 395 (7th Cir. 1999)).

Should the nonmovant require additional discovery, Fed. R. Civ. P. 56 allows it "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition . . ." Fed. R. Civ. P. 56(d). Counsel for Plaintiff argued generally at the hearing that Plaintiff did not yet have all the facts and discovery is warranted. However, Plaintiff did not comply with Fed. R. Civ. P. 56(d) and did not articulate why additional time to conduct further discovery is necessary regarding the statute of limitations or equitable tolling issue.

### III. DISCUSSION

#### A. THE CAUSES OF ACTION ARE TIME-BARRED

Plaintiff agrees that the applicable limitations period is three years. Nothing alleged in the Complaint or presented in the evidence outside the pleadings indicates Plaintiff is

11

exercising one of his rights under the Bankruptcy Code in asserting these causes of action (e.g. §§ 542 – 553), or that he is bringing this action by utilizing the rights and powers of a creditor under nonbankruptcy law (e.g., a claim brought under § 544(b) and South Carolina's Statute of Elizabeth). Rather, the record only indicates Plaintiff's assertion of causes of action resulting from a trustee stepping into the shoes of the "injured party" – the Debtor.

Regarding the declaratory judgment action, it is undeniable that Volkswagen's contractual obligations to Debtor date back to 2009 and Debtor's contractual obligations to the subcontractors arose as late as 2010 and/or 2011 – all of which are far more than three years prior to the filing of the Complaint. The statute of limitations began to run at least by the date the bankruptcy case was filed in January of 2012, more than three years before this action was commenced.

Because Debtor was a party to the alleged conspiracy, Debtor's knowledge of the relevant facts would have been obtained by way of participating in the conspiracy from day one.[11] Far more than three years have passed since Debtor obtained knowledge of the conspiracy, which is described by Plaintiff as a plan to: (1) place Debtor in bankruptcy in order to defeat the claims of lien claimants for the work on the project; (2) preserve the valuable goodwill Debtor had in its relationship with Volkswagen by not aggressively pursuing rightful claims against Volkswagen and transfer the valuable goodwill to SFI America without any liability; and (3) continue doing business with Volkswagen without generating any assets to pay creditors. These actions were complete at least by the date of the bankruptcy filing on January 16, 2012. Three years from that date passed in January 2015.

---

[11] The Court will not address whether Plaintiff can bring a conspiracy claim against Debtor's alleged co-conspirator, as it was not raised by the parties.

12

Therefore, there is no genuine dispute of material fact that Plaintiff's causes of action are time-barred when applying the limitations period imposed by S.C. Code Ann. § 15-3-530(1) and (5).

### B. Tolling the Statute of Limitations

Section 108(a) offers no extension effective to assist Plaintiff here. Debtor filed its voluntary petition on January 16, 2012. This adversary proceeding was not filed until April 5, 2016, which is well past § 108(a)'s outside limits of the later of two years after the bankruptcy was filed (January 16, 2014) or the end of the applicable limitation period (January 2015).

Plaintiff asserts, however, the statute of limitations should be equitably tolled due to acts of concealment and/or delay by Debtor, Herzog, and/or SFI America. Plaintiff points to evidence in the record indicating Debtor's schedules failed to list accounts receivable due or debts owed by Volkswagen, Debtor's records were incomplete or missing, Debtor's representatives were not forthcoming with information and may have impeded Plaintiff's progress, as well as Herzog and SFI America's delays in discovery compliance. Because of these events, Plaintiff asserts the statute of limitations should be tolled and not begin to run until June 2014, when SFI America and Herzog provided additional documents that put Plaintiff on notice of claims against Volkswagen.

The record does not support the application of equitable tolling for Plaintiff's declaratory judgment action. The record does not reveal what relevant documentation or information was delayed regarding this claim or how any delay impacted Plaintiff's ability to discover Volkswagen's obligations under the contract with Debtor or to the subcontractors in the state court litigation. There is nothing in the record to indicate Plaintiff was prevented

13

from obtaining knowledge or information to support this cause of action by any extraordinary event beyond his control, and plenty in the record to support a finding that Plaintiff knew or should have known it existed shortly after this bankruptcy case was filed in 2012.

Although the record includes facts indicating discovery of the alleged conspiracy was challenging, the evidence is vague and does not, even when considering the record in the light most favorable to Plaintiff, reveal why this lawsuit was not filed until April 2016. There is no evidence from which a reasonable jury could find that the entirety, or even some relevant portion, of Plaintiff's considerable delay in filing the action was *caused by* an extraordinary event beyond Plaintiff's control. Plaintiff does not call the Court's attention to any particular fact(s) withheld or undiscoverable that, when finally discovered on a particular date, triggered the filing of this proceeding. Plaintiff does not point to any particular act or delay by another party that corresponds to a commensurate delay in the filing of this lawsuit or evidences some extraordinary event beyond his control.

To be clear, the Court is not weighing competing evidence; instead, there is *no* relevant evidence to support a finding that the filing of this lawsuit as late as April 5, 2016, was timely. The evidence and allegations of delay, withholding of information, or lack of cooperation by other parties here is not enough. The evidence must also support a finding that these things *caused* the requisite period of delay and also must support a finding that the period of delay was *beyond Plaintiff's control*. There is no such evidence in the record before the Court.

**IT IS, THEREFORE, ORDERED** that Volkswagen Group of America, Inc. and Volkswagen Group of America Chattanooga Operations, LLC's Motion to Dismiss is hereby granted.

**AND IT IS SO ORDERED.**

14